IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARY-LOUISE ZANONI,　　　　§
　　　　　　　　　　　　　　§
　　　　Plaintiff,　　　　　　§
　　　　　　　　　　　　　　§
　　　　vs.　　　　　　　　　§
　　　　　　　　　　　　　　§
　　　　　　　　　　　　　　§　　CIVIL ACTION NO.
UNITED STATES DEPARTMENT OF　§
AGRICULTURE,　　　　　　　　§
　　　　　　　　　　　　　　§
　　　　Defendant.　　　　　　§

**VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

1.　　This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §

552; the Privacy Act, 5 U.S.C. § 552a; the Federal Declaratory Judgment

Act, 28 U.S.C. §§ 2201, 2202; and the United States Constitution, Article I,

§ 7.  Plaintiff seeks injunctive and declaratory relief (1) to invalidate a

determination by defendant United States Department of Agriculture that

records sought by plaintiff are not subject to disclosure under the FOIA; (2)

to preserve the records sought by plaintiff pending the resolution of this

action, both those records defendant admits to already having collected and

compiled for disclosure to plaintiff, as well as any additional pertinent

records of defendant; (3) to enjoin defendant Department of Agriculture from

its attempt, in violation of the Privacy Act, to convert (on June 9, 2008)

records sought by plaintiff into a Privacy Act system of records; and (4) to

declare that Section 1619 of the Food, Conservation, and Energy Act of
2008, Public Law 110-234, 122 Stat. 923, does not apply to plaintiff's
request for records under the FOIA, and/or that the Food, Conservation,
and Energy Act of 2008 is invalid as enacted in violation of the Presentment
Clause of the United States Constitution, Article I, § 7, and in violation of
the doctrine of separation of powers.

## Jurisdiction and Venue

2.    This court has both subject matter jurisdiction over this action and personal
jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B),
552a(g)(1)(D), and 552a(g)(5).  This court also has jurisdiction over this
action pursuant to 28 U.S.C. § 1331, 28 U.S.C. §§ 2201(a) and 2202, and
42 U.S.C. § 1983.  Venue lies in this district under 28 U.S.C. § 1391(e), 5
U.S.C. § 552(a)(4)(B), and 5 U.S.C. § 552a(g)(5).

## The Parties

3.    Plaintiff Mary-Louise Zanoni is a freelance journalist residing in the Town of
Russell, St. Lawrence County, New York.

4.    Defendant United States Department of Agriculture ("USDA") is a
department of the Executive Branch of the government of the United States.
USDA is an "agency" within the meaning of 5 U.S.C. §§ 551(1), 552(f), and
552a(a).  The Animal and Plant Health Inspection Service ("APHIS") is a
component agency of defendant USDA.

## **Facts**

5.     Ms. Zanoni's articles have been published in periodicals such as The

Milkweed (a dairy industry monthly), Lancaster Farming (the Northeast's

leading agricultural weekly), Hobby Farms Magazine, Sheep! Magazine, and

Small Farmer's Journal.  Her works also have been republished in such

noted online public fora as the Daily Kos, the Organic Consumers

Association, and the Northeast Organic Farming Association.  Ms. Zanoni

also has been quoted and relied upon as an authority on the subject of the

National Animal Identification System in major media, including The New

York Times[1],  the Los Angeles Times[2], USA Today[3], The Nation[4], The New

Farm (Rodale Institute)[5], Grist[6], Dow Jones Newswires[7], Scripps Howard

News Service[8], and CattleNetwork.com[9].

6.     As to the FOIA request at issue here, Ms. Zanoni seeks records from the

USDA's National Premises Information Repository ("NPIR"), compiled by

defendant USDA as part of its National Animal Identification System.  The

NPIR records, by defendant USDA's admission, consist of basic contact

information for each registered premises, i.e., name of entity, name of

---

[1]  The New York Times, "Plan for Tracking Animals Meets Farmers' Resistance," Dec. 13, 2006,
p. A23; www.nytimes.com/2006/12/13/us/13animals.html
[2]  Los Angeles Times, "Farmers Fear a Barnyard Big Brother," Jan. 14, 2008, p. A1.
[3]  USA Today, "Animal ID Plan Angers Some Farmers," Oct. 27, 2006;
www.usatoday.com/news/nation/2006-10-26-animal-id_x.htm
[4]  www.thenation.com/doc/20071231/pentland_gumpert/3
[5]  www.newfarm.org/features/2006/0406/nais/frymanross.shtml
[6]  www.grist.org/news/muck/2006/03/10/griscom-little/index.html
[7]  www.cattlenetwork.com/content.asp?contentid=28250
[8]  www.shns.com/shns/g_index2.cfm?action=detail&pk=ANIMAL-ID-04-20-06
[9]  www.cattlenetwork.com/content.asp?contentId=70500

contact person, address, telephone number, operation type, and alternate telephone number.[10]

7.    USDA officials publicly have stated that the information stored in the NPIR database is nothing more than basic contact information that would appear in a "phone book;" and nothing more than what could be found on Google.

8.    The enormity of the National Animal Identification System ("NAIS") and the profound changes it would impose on all animal agriculture are fully acknowledged by defendant USDA.  According to former U.S. Secretary of Agriculture Mike Johanns, "to describe [NAIS] as a massive project is to under-describe how big this is and how significant it is and how much is involved. . . .  [Y]ou have 90 to 100 million head of cattle in the United States.  There has never been a system put in place that would deal with that kind of magnitude.  And we are talking about a system that literally says from the time of their birth on through the entire chain, we will trace that animal. . . .  So just a huge undertaking. . . .  [We] are asking the industry not just cattle but in other areas to really change how they look at things, to really change how they're going to manage right down to individual herds through sale barns, through processing plants, through transactions . . . and all of the other species we have out there."[11]

---

[10]  USDA 2005 NAIS Draft Program Standards (discussed infra at ¶¶ 21-22), pp. 10-11.
[11]  Agriculture Secretary Mike Johanns, transcript of press conference of April 6, 2006, Release No. 0121.06, pp. 3-4; text available at (visited May 25, 2008): http://www.usda.gov/wps/portal/!ut/p/_s.7_0_A/7_0_1OB/.cmd/ad/.ar/sa.retrievecontent/.c/6_2_1UH/.ce/7_2_5JM/.p/5_2_4TQ/.d/2/_th/J_2_9D/_s.7_0_A/7_0_1OB?PC_7_2_5JM_contentid=2006%2F04%2F0121.xml&PC_7_2_5JM_parentnav=TRANSCRIPTS_SPEECHES&PC_7_2_5JM_navid=TRANSCRIPT#7_2_5JM.

9.  Ms. Zanoni seeks the NAIS/NPIR information as the basis for an article or series of articles she will write for The Milkweed, a dairy industry monthly published in Wisconsin.  The Milkweed is highly regarded for its investigative reporting in such areas as dairy antitrust and milk pricing (e.g., USDA's own Office of the Inspector General ("OIG") recently praised The Milkweed for bringing to light a very significant error in the agency's milk pricing data).[12]   Ms. Zanoni has a continuing professional relationship with The Milkweed, generally writing an article every other month concerning NAIS developments.

10. The article or series of articles Ms. Zanoni plans to write will examine the authenticity, accuracy, and sources of APHIS's information as compiled in the requested NPIR records.  Specifically, it is widely reported that a vast number of farmers, perhaps hundreds of thousands, who never "volunteered" for what USDA presently insists is the "voluntary" NAIS premises database, nonetheless are included in the database.  It is believed that many farmers are completely unaware that they are in the "voluntary" NPIR database.  In addition, there are many reports of farmers who never "volunteered," who nonetheless discovered that they are in the database, who then strenuously objected to inclusion and demanded their removal from the database and who in some cases were assured that they had been

---

[12]  OIG noted that coverage in The Milkweed was the catalyst for an important investigation into longstanding underreporting of nonfat dry milk price data by USDA's National Agricultural Statistics Service (and consequent serious underpayments to dairy farmers):  "It is significant to note that this error in NASS' weekly estimates was only discovered because of the impact of the article in *The Milkweed*."  USDA OIG Report No. 26901-01-IR, Feb. 2008, p. 2.

removed; only to later discover that their information remains in the database.

11.     It further appears that these farmers have been placed in the database sometimes by USDA itself, by datamining from other unrelated USDA collections of records, without any notice to the farmers of their placement in the NPIR and without the farmers' consent.  In other instances the farmers have been placed in the NPIR by state agriculture departments, working under agreements with USDA; the states datamine their own records from livestock information collections, at the suggestion and with the cooperation of USDA, again usually without any prior notice to or consent from the farmers.  USDA clearly understands that farmers are likely to object to such secret datamining if they learn of it; as USDA warned the states, "This 'pulling' of data from existing databases . . . seems to be . . . cost effective [but] States must carefully consider whether this type of data integration to register livestock premises under NAIS would be interpreted as 'voluntary' and if this would create any problems for premises registration in the long term."[13]  The states are motivated by funds provided by USDA under cooperative agreements, and USDA encourages – indeed, requires -- the rapid expansion of each state's number of premises submitted to the NPIR, as a condition of full payment of the funds.[14]

---

[13]  USDA/APHIS/Veterinary Services, Initial Announcement of Cooperative Agreements for Implementation of National Animal Identification System (NAIS) (FY 2007), Nov. 22, 2006, p. 12.
[14]  Ibid., pp. 4-5.

### *National Animal Identification System and the National Premises Information Repository*

12.   The first general government-imposed system for the routine identification of livestock (as distinct from limited, single-species identification in programs addressing a specific livestock disease) was developed in the European Union in the early 1990s as a reaction to bovine spongiform encephalopathy (BSE, commonly called "mad cow disease").[15]  Fortunately, the cause of BSE (i.e., the recycling of ruminant nervous-system slaughter wastes into new feed for ruminants) has long since been identified and the problem remedied by banning these wastes from ruminant feed.  In the United States, the Food and Drug Administration imposed such a feed ban in 1997 and thereby reduced the likelihood of occurrences of BSE to an exceedingly small number of cases.[16]  By USDA's own figures, as of April 2006 there remained only 4 to 7 total animals likely to be affected with BSE out of a U.S. cow herd of some 100 million animals.[17]

13.   Despite the conquest of BSE through science, the concept of national animal identification systems has not gone away.  Rather, it has been transformed into a potential weapon in international trade disputes over the ability of a handful of significant meat-importing and meat-exporting nations to create potentially protectionist preferences for their own "traceable" meat products, to the potential exclusion of such products from

---

[15]  http://ec.europa.eu/publications/booklets/move/46/index_en.htm
[16]  FDA June 5, 1997 Ruminant Feed Rule, 62 FR 30936.
[17]  "USDA Releases BSE Prevalence Estimate for U.S.," April 28, 2006, USDA Release No. 0143.06.

other countries whose "traceability" (i.e., animal identification and tracking) systems might be less extreme than that of the importing country.

14.     Thus, having established its own animal ID system, the European Union began to demand a similar system from trading partners such as Brazil, Canada, Australia, and the United States.  Brazil and Canada first created limited systems for beef; Australia created a more complex system for beef and lamb; and the European Union continued on a path of making its own system ever more burdensome for farmers.  Media accounts document the often devastating effects these burdensome systems already are having on farmers and ranchers.[18]  Nonetheless, the systems are strongly desired by multinational meatpacking firms, who apparently wish to create a global system for shifting meat production to the lowest-cost producing nations, while retaining the ability freely to sell the products in more prosperous nations.[19]

15.     In the United States, private meat and livestock industry firms began developing a possible private national animal ID system during the 1990s, working principally through their trade organization, the National Institute for Animal Agriculture ("NIAA").  Firms and organizations such as Cargill,

---

[18] "Fight NAIS Down to the Last Cowboy, Says Australia Beef Association," www.r-calfusa.com/News%20Releases/2008/080304-fight.htm; "Electronic ID for Sheep on Agenda" (UK sheep farmers say proposed EU requirement of RFID for all sheep would be "unmitigated disaster" and costs would force many farmers out of the sheep business), The Northern Echo, Dec. 11, 2007, www.thenorthernecho.co.uk/misc/print.php?artid=1896750.

[19] For example, dominant pork producer Smithfield, following Romania's admission to the European Union, has established extensive swine production operations in Romania to serve the EU market because labor, facilities, and land costs are much cheaper in Romania than in Western Europe.  "Smithfield Targets Romania for Expansion into Europe," www.meatprocess.com/news/ng.asp?id=70416-Smithfield-romania-pork

Monsanto, and the National Pork Producers are members of the NIAA.[20]  In addition, during the development of NIAA's animal ID plans over the last decade, economically powerful marketers of electronic animal ID systems and equipment, such as Destron Fearing, Cattle-Traq, EZ-ID/AVID ID Systems, Allflex, and Global Vet Link, appear to have joined the NIAA in increasing numbers.

16. By 2003, the NIAA, assisted by some animal-identification personnel who had joined the staff of the USDA's Animal and Plant Health Inspection Service, had drafted a United States Animal Identification Plan ("USAIP"). The USAIP contained the basic elements that later would be fully developed in NAIS, i.e., premises registration, individual animal identification, and animal tracking.

17. The USAIP (January 2004, p. 1) also frankly admitted the economic and trade motives behind its creation:  "The US Animal Identification Plan . . . is essential to preserve the domestic and <u>international</u> <u>marketability</u> of our nation's animals and animal products."  (Emphasis added.)

18. The concentration upon international trade as the basis for a USAIP/NAIS type of system persisted after defendant USDA decided to adopt such a system as a matter of federal regulation.   For example, in April 2006 Agriculture Secretary Mike Johanns noted, "Traceability is being used as a marketing tool by several countries.  For example, Australia is aggressively

---

[20] http://animalagriculture.org/aboutNIAA/members/memberdirectory.asp, visited May 25, 2008.

marketing animal traceability to gain a competitive advantage over us."[21] Recently, on March 4, 2008, USDA Under Secretary Bruce I. Knight gave a speech entitled "Animal ID and International Trade," in which he made clear that World Trade Organization rules allowing countries with their own animal ID systems to demand the same systems from other countries, were the driving force behind the adoption and growth of animal ID systems such as NAIS.[22]

19.    The NIAA continued to work on the USAIP during 2003, but it appeared that most livestock owners, whether commercial or non-commercial owners, remained unaware that industrial agriculture might be promoting such a system to USDA/APHIS.  Then, in December 2003, the discovery of the first U.S. cow with BSE provided a sudden catalyst for USDA to assume government control, with corresponding potential legal powers of enforcement, of a U.S. national animal ID program.  Former Agriculture Secretary Ann Veneman first announced USDA's intention for a federal NAIS at a press conference on December 30, 2003, one week after the discovery of the first case of BSE in the U.S.[23]

20.    By 2004, USDA/APHIS had assumed a central role in the development of NAIS.  USDA/APHIS began offering substantial funding to state agriculture departments for field trials and early implementation of NAIS.  However,

---

[21]  Transcript of news conference, April 6, 2006, p. 1, USDA Release No. 0121.06; see note 11, supra.

[22]  www.aphis.usda.gov/newsroom/speeches/content/2008/03/Houston_Livestock_Show_final_3-4-08.pdf

[23]  Transcript of press conference, Dec. 30, 2003, Release No. 0450.03, http://www.usda.gov/documents/NewsReleases/2003/12/0450.doc

despite NAIS being a "massive project" and "huge undertaking,"[24] USDA apparently failed to formulate any coherent plan for seeking specific statutory authorization for NAIS. Nor is there any indication that USDA adequately considered the legal ramifications under the FOIA, the Privacy Act, or otherwise, of compiling the NPIR and other NAIS databases.

21. By April 2005, USDA/APHIS had completed a Draft Strategic Plan ("Plan") and Draft Program Standards ("Standards") for NAIS. Notice of the Plan and Standards was published in the Federal Register on April 25, 2005, along with an ancillary document, the NAIS Technical Supplement. Although USDA/APHIS did not contemplate any NAIS rulemaking before mid-2006, the agency requested public comment on the April 2005 NAIS draft documents.

22. The April 2005 Plan and Standards revealed an onerous, complex, burdensome system far beyond what had been suggested in the USAIP. The three elements of NAIS were developed in elaborate detail in the 2005 Plan and Standards:

   a. Premises ID. Anyone owning even one horse, cow, pig, chicken, sheep, pigeon, or virtually any livestock animal, for private as well as commercial purposes, would be subject to mandatory premises ID, i.e., registration of their home, including owner's name, address, and telephone number, and keyed to Global Positioning System coordinates, in an enormous federal database under a 7-

---

[24] Former Agriculture Secretary Mike Johanns, transcript of news conference, April 6, 2006, p. 1, USDA Release No. 0121.06; see note 11, supra.

digit "premises ID number." (Standards, pp. 3-4, 10-12; Plan, p. 12.)

b. Animal ID. Every animal would be assigned a unique 15-digit ID number, also permanently stored in a huge database. The only notable exception would be for pigs and chickens raised in large industrial confinement facilities; the owners of such facilities essentially are exempt from the second and third components of NAIS, as USDA will allow them to self-assign a single group ID number for thousands of animals, and to maintain their own records of the ID numbers and animal movements, without being required to report movements or make payments to the tracking databases described below.[25] The required form of ID for larger animals usually would be a tag or microchip containing a Radio Frequency Identification Device (RFID), designed to be read from a distance. (Plan, pp. 8, 12-13; Standards, pp. 6, 12, 20, 27-28.) Possible additional forms of required identification would entail collecting the DNA of every animal and/or a retinal scan of every animal. (Plan, p. 13.)

c. Animal Tracking. The animal owner would be required to report: the birthdate of an animal, the application of every animal's ID tag, every time an animal leaves or enters the property, every time an animal loses a tag, every time a tag is replaced, the slaughter or

---

[25] NAIS User Guide, Nov. 2006, p. 32; USDA/APHIS NAIS Business Plan, Dec. 12, 2007, pp. 20-23.

death of an animal, or if any animal is missing. Such events would have to be reported within 24 hours. (Standards, pp. 12-13, 17-21.) USDA plans that private entities will run the tracking databases and will charge animal owners for each report submitted.

23. USDA/APHIS stated in the 2005 Plan (p. 10) that it would conduct rulemaking on NAIS in the summer of 2006 and would make premises ID and individual animal ID mandatory by January 2008; animal tracking would be mandatory by January 2009.

24. Farmers, ranchers, and non-commercial animal owners reacted with outrage to the draconian terms of the Draft Strategic Plan and Draft Program Standards, and to the fact that NAIS exempts industrial confinement farms from most of its requirements. Many members of the livestock community and many sustainable- and family-farming interest groups, such as the Northeast Organic Farming Association, Organic Consumers Association, and Family Farm Defenders (Wisconsin), began openly to oppose NAIS.[26]

25. During 2005 and early 2006, USDA was urging some state agriculture departments to pursue enabling legislation and/or rulemaking for the first phase of NAIS, mandatory premises ID, at the state level. However, due to

---

[26] On the negative reactions to NAIS, see The New York Times, "Plan for Tracking Animals Meets Farmers' Resistance," Dec. 13, 2006, A23, www.nytimes.com/2006/12/13/us/13animals.html; USA Today, "Animal ID Plan Angers Some Farmers," October 27, 2006, www.usatoday.com/news/nation/2006-10-26-animal-id_x.htm.

citizen objections, mandatory premises ID legislation was blocked in Vermont and Maine in early 2006.[27]

26. The Vermont Secretary of Agriculture, when announcing in August 2006 that Vermont's attempts to make premises ID mandatory were being abandoned and that the state was also suspending even voluntary participation in USDA's NPIR, reportedly gave as his justification that USDA was unable to assure Vermont agriculture officials that the NPIR would be exempt from disclosure under the FOIA.[28]

27. In April 2006 the USDA released a new NAIS Implementation Plan that stated NAIS would be "voluntary" for the present but that the USDA considered it "necessary to reach full participation" (which USDA defined as 100% of premises registered and 100% of animals born in the past year individually identified) by early 2009.

28. This Implementation Plan set rigid numerical targets for premises ID, individual animal ID, and animal tracking. When releasing the Implementation Plan, Agriculture Secretary Johanns threatened that USDA had the power to make NAIS mandatory "today" if farmers and animal owners did not "volunteer" in sufficient numbers to meet USDA targets.[29]

29. During 2006, defendant USDA hired public relations consultants to create a "communications campaign" to counter the overwhelmingly negative press

---

[27] *See, e.g.*, County Courier (Northwest Vermont), "Livestock Registry Hearings Bring out Critics; Many Vow to Defy Rules," August 3, 2006; The Ellsworth (Maine) American, "Ag Committee Concedes; Animal ID Plan on Hold," March 16, 2006.
[28] www.cattlenetwork.com/content.asp?contentId=70500
[29] Transcript of news conference, April 6, 2006, USDA Release No. 0121.06; see note 11, <u>supra</u>.

coverage and public perceptions of NAIS.    The work of revamping NAIS "communications" included USDA undisclosed monitoring of 93 websites and blogs of citizen groups opposed to NAIS and attempting to brand groups opposed to NAIS as "extreme opposition groups."[30]   These groups opposing NAIS have included leading national and regional organizations of independent farmers, ranchers, and consumers, such as R-CALF USA, Organic Consumers Association, the Northeast Organic Farming Association, Family Farm Defenders, Rural Vermont, the Cornucopia Institute, Community Farm Alliance of Kentucky, Missouri Rural Crisis, Farm Wives United, Empire State Family Farm Alliance, Northeast Pastured Poultry Association, Church Women United, and Citizens for a Clean Environment.

30.    On November 22, 2006, USDA released the NAIS User Guide.  Simultaneous with the release of the User Guide, the USDA expunged all copies of and references to the unpopular 2005 Draft Strategic Plan from the USDA website.   The User Guide stated that it "replaces all previously published [NAIS] program documents, including the 2005 Draft Strategic Plan and Draft Program Standards and the 2006 Implementation Strategies."

31.    While claiming that NAIS would remain "voluntary at the Federal level" (p. 4), the User Guide contradicted the "voluntary" nature of NAIS in several respects.  For example, the User Guide (p. 5) states, "The goal [of NAIS] is to establish a <u>complete record of all locations, or premises,</u> in the United

---

[30]  Presentation by former USDA/APHIS press officer Dore Mobley at NIAA ID Expo, Kansas City, Missouri, August 23, 2006.

States that manage or hold livestock and/or poultry." (Emphasis added.) The User Guide (p. 8) also suggested that USDA would begin requiring livestock owners to obtain NAIS-compliant RFID, microchip, or other individual animal IDs, as well as NAIS premises IDs, in order to continue their participation in routine "longstanding disease management programs" or to obtain the USDA/APHIS issued permits required for interstate movement of livestock. As a practical matter, it is nearly impossible for commercial livestock owners, and even for non-commercial owners, to avoid all participation in such programs. Therefore, under the terms of the User Guide, participation in these commonly used programs will result in a NAIS premises ID and NAIS individual animal IDs being assigned to the livestock owner, without his/her prior knowledge of, or consent to, participation in the supposedly "voluntary" NAIS. The User Guide (p. 64) envisions a day when every livestock animal will have NAIS ID: "Ultimately, the [NAIS] Animal Identification Number will be the sole national numbering system for the official identification of individual animals in the United States." (Emphasis added.)

32.    Under the USDA approach to NAIS as defined in the User Guide, states receiving USDA funding to promote NAIS have employed an array of coercive tactics to increase the number of NAIS premises IDs in the NPIR database. For example, the New York Department of Agriculture & Markets began, as early as 2006, placing livestock owners into the NPIR without any prior notification of such placement, whenever the livestock owners sought

16

routine vaccinations or health testing of animals. New York has pursued this tactic in calfhood vaccination programs for cattle; in Coggins testing for horses; and in pullorum testing for poultry. Many of these tests are required as a condition of transporting or selling animals, or competing in fairs or shows with livestock, so it is not feasible for most livestock owners simply to avoid the tests. In North Carolina, state agriculture officials refused to provide livestock farmers with emergency shipments of drought-relief hay unless the farmers first agreed to be placed in the "voluntary" NAIS premises ID database.[31]

33. In December 2007 USDA/APHIS released a NAIS Business Plan. The Business Plan spells out a detailed program for forcing livestock owners into NAIS premises ID and NAIS individual animal ID by requiring NAIS identification for all animal disease testing and vaccination programs and for all interstate shipping permits for livestock. USDA/APHIS also plans to greatly expand certain testing and identification requirements that will force more livestock owners into NAIS. For example, USDA/APHIS plans a national requirement for Coggins testing for horses that would mandate the test – and consequent NAIS participation – for every change of ownership of a horse. In addition, over the past several years USDA/APHIS has demanded that states, under pain of maintaining "complaint" status in USDA's sheep/goat Scrapie Eradication Program ("SEP"), adopt state rules requiring SEP tags for every sheep/goat sold. The official tags can only be

---

[31] www.ncagr.com/HayAlert/EmergencyHay.htm, visited May 26, 2008.

obtained by sheep/goat owners from USDA/APHIS and when owners order the tags, USDA/APHIS cross-references the owners' scrapie program data to a NAIS premises ID number – apparently in most cases without informing the owners that they have now been placed in the NAIS premises ID program. By means of these uses of testing and disease programs and interstate shipping permits, USDA/APHIS has evaded the rulemaking process originally planned for NAIS and will instead adopt these uses of NAIS unilaterally and without formal notice to livestock owners, as "procedures" in the longstanding disease programs and shipping requirements.[32]

34. On April 2, 2008, USDA's Agricultural Marketing Service ("AMS") released its "AMS Business Plan to Advance NAIS" ("AMS Business Plan"), detailing how AMS will cooperate with APHIS in the aggressive promotion of NAIS. Specifically, the AMS Business Plan reveals that: AMS will "actively encourage" use of NAIS premises ID, and plans to adopt NAIS individual-animal RFID, for all its process-verified programs; AMS will "aggressively educate and inform" the Boards of the beef, dairy, egg and pork checkoff programs to encourage the use of the checkoff funds collected from farmers to promote the imposition of NAIS on farmers; AMS will "assist" companies such as Tyson Beef, Poultry, and Pork to develop systems "to transfer live [NAIS] animal ID to carcasses" (resulting in unprecedented new product

---

[32] USDA/APHIS NAIS Business Plan, Dec. 12, 2007, pp. 16-19 (cattle); pp. 26-27 (horses); pp. 24-25 (sheep/goats); p. 53 ("procedures" to be established in 2008-09 to require NAIS premises ID in all animal health programs and on all shipping permits).

liability exposure for animal producers)[33]; AMS will promote NAIS through the Federal Milk Marketing Order Program; despite a statutory prohibition against using mandatory NAIS in the pending Country-of-Origin Labeling ("COOL") program, AMS is creating a "COOL 'safe harbor' for NAIS participants" that will encourage meatpackers to force animal producers to use NAIS ID; and, as to AMS's own employees, the AMS Administrator has "encouraged staff to take the lead and register their premise with NAIS" and "AMS will continue to use every opportunity to vigorously promote NAIS to AMS staff."[34]

### *History of Ms. Zanoni's FOIA Request*

35. By letter dated October 24, 2007, Ms. Zanoni requested under the FOIA, copies of the following agency records:

   a. "All records of registered premises contained in the National Premises Information Repository, which we understand to be maintained at the APHIS facilities at Fort Collins, Colorado, and which, according to the APHIS website for the National Animal Identification System, http://animalid.aphis.usda.gov/nais/index.shtml, contained, as of October 15, 2007, the records of 421,217 registered premises.  We understand that according to APHIS, http://animalid.aphis.usda.gov/nais/faq/faq.shtml#Q6, the record of each registered premises typically consists of basic contact information, i.e., name of the entity, name of a contact person, address, telephone number, operation type, and alternative telephone number."

---

[33] On potential liability consequences of NAIS, see USDA/APHIS 2005 NAIS Draft Strategic Plan (p. 11), noting "concerns that [NAIS] would increase the participants' risk of liability and financial loss from food safety issues for which they are not responsible."  See also Eric Pendergrass, "Approaching Liability with Animal Identification,"  National Agricultural Law Center (Univ. of Arkansas School of Law) Research Article, July 2007, www.NationalAgLawCenter.org/assets/articles/pendergrass_liability.pdf
[34] AMS Business Plan to Advance NAIS, Apr. 2, 2008, http://www.ams.usda.gov/AMSv1.0/getfile?dDocName=STELPRDC5068314

    b. "The number of requests to be removed from the premises database that APHIS has received from owners/managers of registered premises;" and

    c. "The number of premises that actually have been removed from the database."

36.    Ms. Zanoni's FOIA Request was sent to FOIA Officer Leisa Banks by facsimile and certified mail at the USDA's Animal & Plant Health Inspection Service on October 24, 2007. A copy of the letter is attached hereto as Exhibit A.

37.    Ms. Banks received the letter by certified mail on October 26, 2007. A copy of the receipt is attached hereto as Exhibit B.

38.    By letter dated October 30, 2007, USDA/APHIS FOIA Program Specialist Robbie Perry acknowledged receipt of Ms. Zanoni's request and informed Ms. Zanoni's counsel that the requested records were located outside of the office and that a search could not be done within 30 days; but Mr. Perry assured that the request would be processed "as soon as possible." Mr. Perry's letter is attached hereto as Exhibit C.

39.    No appeal rights were communicated by Mr. Perry in his October 30, 2007 letter. He did however, invite questions about discussing the time frame for the request.

40.    On November 16, 2007, counsel for Ms. Zanoni contacted Mr. Perry to discuss the FOIA request and the status of processing. Mr. Perry stated that some 17,000 pages of printed NPIR records had been sent to his office in APHIS's efforts to process Ms. Zanoni's FOIA request. Mr. Perry indicated that these paper records were present in his office and that he was about to

begin processing and sending groups of 200 records at a time to Ms.

Zanoni's counsel in fulfillment of Ms. Zanoni's FOIA request.

41.    No records were received from Mr. Perry.  By letter dated December 13,

2007, Garfield Daley, the Acting Director, USDA/APHIS Freedom of

Information & Privacy Act Staff, denied in total Ms. Zanoni's FOIA request.

Mr. Daley based the denial on FOIA Exemption 6, 5 U.S.C. § 552(b)(6),

claiming that the NAIS information is "personal in nature."  Mr. Daley's

letter is attached hereto as Exhibit D.

42.    By letter dated December 21, 2007, Ms. Zanoni appealed the agency's initial

determination denying her request to Cindy J. Smith, the Administrator of

USDA's Animal and Plant Health Inspection Service.  This letter was

transmitted by First Class Mail and electronic mail.  The first class mail

letter was received by Ms. Smith on December 26, 2007.  A copy of the letter

is attached hereto as Exhibit E.

43.    Ms. Zanoni's appeal to Ms. Smith explained that USDA's own description of

the records (i.e., as consisting of name of entity, name of contact person,

address, telephone number, operation type, and alternative telephone

number) belies any claim of personal information falling under Exemption 6.

The appeal also explained the public interest that exists in the examination

of these records and noted that the 17,000 pages of printed records in Mr.

Perry's office should be maintained intact in anticipation of the possibility of

litigation over the request.  Finally, Ms. Zanoni sought:  (1) reversal of the

December 13, 2007 denial of requests for NPIR records of registered

premises, for the number of requests APHIS has received for removal from

the NPIR, and for the number of records APHIS has actually removed from

the NPIR; (2) a direction to APHIS FOIA staff to produce the records

requested without any further delay; and (3) a determination of the fee

status of the request pursuant to 5 U.S.C. § 552 (a) (4) (A) (iii) and 5 U.S.C.

§ 552 (a) (4) (A) (ii) (II).

44.    Neither Ms. Smith nor any other official from the USDA responded to Ms.

Zanoni's appeal in any way and the 20 days to do so have long passed.

45.    The USDA failed to make a "determination" on the merits of Ms. Zanoni's

FOIA appeal within 20 working days of receipt.

46.    The USDA failed to "immediately notify the person making such request of

the provisions for judicial review of that determination."  5 U.S.C. §

552(a)(6)(A)(ii).

### *Recent Activity of the Department of Agriculture to Defeat Its Obligation to Produce Records*

47.    In the Federal Register for April 30, 2008, USDA announced an intention of

declaring, effective June 9, 2008, the NPIR and several other NAIS

databases to be "Privacy Act systems of records." [35]

48.    According to the USDA/APHIS Draft Business Plan for NAIS, released in

December 2007 (p. 61), the NPIR "became operational in mid-2004."

49.    When an agency wishes to create a system of records that is subject to the

Privacy Act, the agency must publish a required Federal Register notice

upon establishment of the system.  5 U.S.C. § 552a(e)(4).  USDA failed to

---

[35]  73 Federal Register 23412-14.

publish the required notice at the establishment of the NPIR and the Privacy Act does not permit such publication four years or more after the fact.

50.  Under Privacy Act § 552a(r), an agency must report all new Privacy Act systems to Congress (i.e., to the House Committee on Oversight and Government Reform and the Senate Committee on Homeland Security and Governmental Affairs), and to the Office of Management and Budget.  This reporting is intended "to permit an evaluation of the probable or potential effect of such proposal on the privacy or other rights of individuals."  5 U.S.C. § 552a(r).  Reporting to Congress and OMB over four years after the establishment of the NPIR defeats this clear statutory requirement of legislative and OMB oversight.

51.  Privacy Act § 552a(e)(2) requires collecting the record system's information "to the greatest extent practicable directly from the subject individual."  It is believed that many (perhaps most) of the records in the NPIR were not collected from individual livestock owners, but instead were dumped into the NPIR (with no prior notice to, or consent from, the individual livestock owners) from states' pre-existing databases for records of brands, calfhood vaccination programs, Coggins testing for horses, etc., or from longstanding APHIS programs such as the sheep/goat Scrapie Eradication Program.

52.  Privacy Act § 552a(e)(3) requires an agency to give written notice to individuals of the legal authority for the record system, and of the uses to be made of the information.  It is believed that USDA/APHIS has been

collecting NPIR information for over four years with no coherent system for

giving such Privacy Act notices to affected individuals.

53.    For all the foregoing reasons, USDA/APHIS's Privacy Act notice of April 30,

2008, 73 Federal Register 23412ff, violates the terms of the Privacy Act and

USDA must not be permitted to proceed with its stated intention of

converting the pre-existing NAIS records, particularly the NPIR, into a

purported Privacy Act system of records on June 9, 2008.

### *New USDA Secrecy Provision in Farm Bill; Fatal Errors in Enactment of Farm Bill, i.e., Violation of the Presentment Clause, United States Constitution, Article I, Section 7, and Violation of the Doctrine of Separation of Powers*

54.    In July 2007 the U.S. House of Representatives passed H.R. 2419 (the

"2007 Farm Bill") and in December 2007 the U.S. Senate passed a

substantially amended version of the 2007 Farm Bill.

55.    In April 2008 a House-Senate Conference Committee began work on

reconciling the chambers' different versions of the 2007 Farm Bill.

56.    The Conference Report for the 2007 Farm Bill was filed on May 13, 2008.

57.    Completely new language, Section 1619(b), had been added to the bill's Title

I-Commodities by conferees, apparently at the eleventh hour.  Section

1619(b) purports to prohibit USDA from disclosing "information provided by

an agricultural producer or owner of agricultural land concerning the

agricultural operation, farming or conservation practices, or the land itself,

in order to participate in programs of the Department."  Section 1619 was

inserted into the Commodities Title despite having no specific relation to

commodities programs and was placed under the misleading heading of

"Information Gathering."  Section 1619 may be an attempt at legislative

reversal of the February 15, 2008 decision of the United States Court of

Appeals for the District of Columbia Circuit in <u>Multi Ag Media LLC v.</u>

<u>Department of Agriculture</u>, 515 F.3d 1224.  Section 1619(b) is vaguely

drawn, was never publicly discussed before enactment, and (unlike §

1619(a) dealing with geospatial information) is not mentioned at all in the

Conference Committee's Statement of Managers.

58.    The Conference Report was passed by the House on May 14, 2008 and by

the Senate on May 15, 2008.

59.    On May 20, 2008 a bill was presented to the President, who had often and

consistently voiced his intention to veto this legislation.  Apparently at some

point after a bill had been conveyed to the President, Congress discovered

that an entire title of the 2007 Farm Bill, Title III, although it had been duly

adopted by both chambers on May 14, 2008 (House) and May 15, 2008

(Senate), had been omitted from the bill that had been presented to the

President.  Title III-Trade occupies 35 pages of the Conference Report and

covers such vital programs as all U.S. food aid to foreign countries,

agricultural export programs, and crucial amendments to the Tariff Act of

1930 to address longstanding trade issues concerning softwood lumber.

60.    On May 21, 2008, the President vetoed the bill that had been presented to

him and returned the bill and his objections to the originating legislative

chamber, the House of Representatives.

61.   By this time Congress was fully aware that the bill presented to the
President was not the same bill that had been passed by both chambers.
Rep. Boehner of Ohio argued that there were constitutional infirmities in
attempting to override the president's veto by passing a different bill
(without Title III) than the bill originally passed by Congress.  (Congressional
Record, May 21, 2008, H4410-11.)  Senator Gregg of New Hampshire argued
that "the bill we are voting on isn't the bill that passed the Senate or the
House."  (Congressional Record, May 22, 2008, S4745.)

62.   Nonetheless, apparently wishing to complete an override of the President's
veto and faced with deadlines of a Memorial Day recess and the looming
expiration (on May 23, 2008) of a temporary extension of existing law in the
form of the 2002 Farm Bill, the House of Representatives chose to pass a
materially different bill (without any Title III) as a purported veto override on
May 21, 2008.  The Senate also passed the different bill as a purported veto
override on May 22, 2008.  Thus, Congress purported to override a
Presidential veto by knowingly passing a materially different bill than the
original bill that had been passed on May 14, 2008 (House) and May 15,
2008 (Senate).

## FIRST CAUSE OF ACTION
### Violation of the Freedom of Information Act by
### Wrongful Withholding of Agency Records

63.  Plaintiff repeats and realleges the above paragraphs.

64.  Ms. Zanoni has exhausted the applicable and available administrative
     remedies with respect to USDA's determination of her FOIA request.

65.  Defendant USDA and its component agency, the Animal and Plant Health
     Inspection Service, have wrongfully withheld the requested records from Ms.
     Zanoni.

66.  Ms. Zanoni is entitled to injunctive and declaratory relief with respect to the
     release and disclosure of the requested documents.

    WHEREFORE, plaintiff demands relief as set forth in her prayer for relief.


## SECOND CAUSE OF ACTION
### Violation of the Privacy Act through Attempt to
### "Convert" NPIR into a Privacy Act System of Records

67.  Plaintiff repeats and realleges the above paragraphs.

68.  Plaintiff is a citizen of the United States and therefore an individual entitled
     to challenge defendant USDA's purported conversion of the NPIR into a
     Privacy Act system of records.

69.  USDA's purported "conversion" will have a real and immediate adverse effect
     on plaintiff in that, if the NPIR and other NAIS databases are in the future
     made subject to the Privacy Act, this status will increase plaintiff's expense
     in accessing information as well as burden, delay, and in many instances
     entirely frustrate plaintiff's access to records needed to examine USDA's

past and future management of NAIS.  Whereas plaintiff's access to records

of contact information may be supported under FOIA, access to the same

type of information would be greatly complicated and placed in doubt by the

completion of USDA's after-the-fact attempt to designate the NPIR and

related systems as "Privacy Act" records.

70.   Defendant USDA's attempt at conversion of the NPIR into a "Privacy Act

system of records" violates the terms of the Privacy Act and therefore should

be enjoined by this Court.

WHEREFORE, plaintiff demands relief as set forth in her prayer for relief.

## Prayer for Relief

WHEREFORE, plaintiff prays that this Court:

A. issue a declaration that the records sought by Ms. Zanoni in this

action constitute "agency records" subject to disclosure under the

Freedom of Information Act;

B. issue a declaration that Section 1619 of the Food, Conservation, and

Energy Act of 2008, Public Law 110-234, 122 Stat. 923, does not bar

disclosure of the records sought by plaintiff (1) because Section 1619

does not by its terms apply to such records; (2) because Section 1619 is

not retroactive and therefore cannot affect defendant's obligation to

produce the records; and/or (3) because the Food, Conservation, and

Energy Act of 2008, Public Law 110-234, 122 Stat. 923, is

unconstitutional because it was enacted in violation of the United States

Constitution, Article I § 7, and the doctrine of separation of powers;

C. order defendant USDA and its component agency, the Animal and

Plant Health Inspection Service, to preserve the records sought by Ms.

Zanoni in this action pending final disposition of this litigation;

D. order defendant USDA and its component, the Animal and Plant

Health Inspection Service, to process immediately the requested records

in their entirety;

E. order defendant USDA and its component, the Animal and Plant

Health Inspection Service, upon completion of such processing, to

disclose the requested records in their entirety and make copies,

including electronic copies, available to plaintiff;

F. order defendant USDA and its component agency, the Animal and

Plant Health Inspection Service, to cease its attempt to convert the

subject records into a Privacy Act system of records;

G. provide for expeditious proceedings in this action;

H. award plaintiff her costs and reasonable attorneys fees incurred in

this action; and

I. grant such other relief as the Court may deem just and proper.

Respectfully submitted,

CLYMER & MUSSER, P.C.

Date: June 2, 2008                     _s/Leonard G. Brown, III_____
                                       LEONARD G. BROWN, III
                                       Pennsylvania Bar No. 83207
                                       408 West Chestnut St.
                                       Lancaster, PA 17603
                                       (717) 299-7101
                                       (717) 299-5115—facsimile

## DECLARATION UNDER PENALTY OF PERJURY

I, MARY-LOUISE ZANONI, a citizen of the United States and resident of the State of New York, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing Complaint and the factual allegations therein, and the facts as alleged are true and correct.

Executed this 29th day of May, 2008, at Russell, New York.

_____
Mary-Louise Zanoni

30

# EXHIBIT A

CLYMER & MUSSER, P.C.

ATTORNEYS AT LAW

408 WEST CHESTNUT STREET

POST OFFICE BOX 1766

LANCASTER, PA 17608-1766

JAMES N. CLYMER
ROBERT F. MUSSER
JEFFREY D. MOHLER
LEONARD G. BROWN, III
RANDALL L. WENGER
ANDREA L. SHAW
DAVID R. DYE

DENNIS E. BOYLE
OF COUNSEL

(717) 299-7101

FAX (717) 299-5115

www.clymerlaw.com

E-MAIL law@clymerlaw.com

210 NORTH STATE STREET
EPHRATA, PA 17522
(717) 733-7471

16 SOUTH HESS STREET
QUARRYVILLE, PA 17566
(717) 786-0500
FAX (717) 786-2111

DIRECT ALL CORRESPONDENCE
TO THE LANCASTER OFFICE

## FOIA REQUEST

October 24, 2007

Ms. Leisa Banks
FOIA Officer
Animal & Plant Health Inspection Service
4700 River Road, Unit 50
Riverdale, MD 20737-1232
***VIA FACSIMILE to (301) 734-5941 and Certified Mail***

Dear Ms. Banks:

This request under the Freedom of Information Act, 5 U.S.C. §552, and under the United States Department of Agriculture (USDA) regulations, 7 CFR Part 1, subpart A, §§ 1.1 *et seq.*, and Animal and Plant Health Inspection Service (APHIS) regulations, 7 CFR part 370, §§ 370.1 *et seq.*, is submitted to you as the component agency representative pursuant to 7 CFR §1.5(g). I submit this request on behalf of Mary-Louise Zanoni, of the Town of Russell, St. Lawrence County, New York, who also maintains an office in the Village of Canton, St. Lawrence County, New York.

This request is for the following records:

1.  ***All records of registered premises contained in the National Premises Information Repository***, which we understand to be maintained at the APHIS facilities at Fort Collins, Colorado, and which, according to the APHIS website for the National Animal Identification System, http://animalid.aphis.usda.gov/nais/index.shtml, contained, as of October 15, 2007, the records of 421,217 registered premises. We understand that according to APHIS, http://animalid.aphis.usda.gov/nais/faq/faq.shtml#Q6, the record of each registered premises typically consists of basic contact information, i.e., name of the entity, name of a contact person, address, telephone number, operation type, and alternative telephone number.

Page 2

***In addition to these records of registered premises, please also supply:***

2.    The number of requests to be removed from the premises database that APHIS has received from owners/managers of registered premises; and

3.    The number of premises that actually have been removed from the database.

I request that the premises registration records be provided on a computer disk or disks and APHIS may deliver these records to my office address and I will convey them to Ms. Zanoni.

A waiver of charges or reduced charges pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) is requested, insofar as, pursuant to the statutory criteria, "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." In the alternative, Ms. Zanoni's request qualifies for the fee limitations set forth in 5 U.S.C. § 552(a)(4)(A)(ii)(II), because she is a "representative of the news media" within the meaning of that subsection. Specifically, Ms. Zanoni is a freelance journalist whose articles have been published in periodicals such as Lancaster Farming, Hobby Farms Magazine, Sheep! Magazine, Small Farmer's Journal, and Countryside magazine; her works also have been republished in such noted online public forums as those of the Daily Kos, the Organic Consumers Association, and the Northeast Organic Farming Association. Ms. Zanoni also has been quoted and relied upon as an authority on the subject of the National Animal Identification System in major media outlets, including The New York Times www.nytimes.com/2006/12/13/us/13animals.html, USA Today www.usatoday.com/news/nation/2006-10-26-animal-id_x.htm, The New Farm (Rodale Institute) www.newfarm.org/features/2006/0406/nais/frymanross.shtml, Grist www.grist.org/news/muck/2006/03/10/griscom-little/index.html, Dow Jones Newswires www.cattlenetwork.com/content.asp?contentid=28250, Scripps Howard News Service www.shns.com/shns/g_index2.cfm?action=detail&pk=ANIMAL-ID-04-20-06, and CattleNetwork.com www.cattlenetwork.com/content.asp?contentId=70500.

As to the present FOIA request, Ms. Zanoni seeks this information because it is required as the basis for an article she is under contract to write for Small Farmer's Journal of Sisters, Oregon. Ms. Zanoni has a continuing relationship with Small Farmer's Journal, having already written numerous articles for this publication. The article she is now under contract to write will examine the authenticity, accuracy, and sources of APHIS's information as compiled in the requested records.

I look forward to your response within the period specified under 5 U.S.C. § 552(a)(6)(A)(i).

Very truly yours,

Leonard G. Brown, III

cc:    Mary-Louise Zanoni

Message Confirmation Report                    OCT-24-2007 04:39 PM WED

Fax Number    :
Name          :

Name/Number   :   13017345941
Page          :   3
Start Time    :   OCT-24-2007 04:38PM WED
Elapsed Time  :   00'35"
Mode          :   STD ECM
Results       :       [O.K]

---

Message Confirmation Report                    OCT-24-2007 04:32 PM WED

Fax Number    :
Name          :

Name/Number   :   13017345941
Page          :   0
Start Time    :   OCT-24-2007 04:31PM WED
Elapsed Time  :   00'00"
Mode          :   STD G3
Results       :   [No Answer]

---

JAMES M. CLYMER          **CLYMER & MUSSER P.C.**          210 NORTH STATE STREET
ROBERT E. MUSSER            ATTORNEYS AT LAW                  EPHRATA PA 17522
JEFFREY D. MOHLER         408 WEST CHESTNUT STREET              717-733-7421
LEONARD G. BROWN III        POST OFFICE BOX 1766           16 SOUTH HESS STREET
ANDREA L. SHAW             LANCASTER PA 17608-1766          QUARRYVILLE PA 17566
DAVID R. DYE                   (717) 299-7101                   717-786-0900
JEFFREY A. CONRAD            FAX (717) 299-5115             FAX 717-786-2111
                            www.clymerlaw.com
                        E-MAIL law@clymerlaw.com               DIRECT ALL
                                                             CORRESPONDENCE
                                                        TO THE LANCASTER OFFICE

f a c s i m i l e

Please note: The information contained in this facsimile transmission is subject to the
attorney/client privilege and is intended only for the use of the recipient designated below. If the
person receiving this message is not the intended recipient, please note that any dissemination of
this communication is prohibited.

DATE:          OCTOBER 24, 2007
TO:            MS. LEIRA BANKS
FAX NUMBER:    301-734-5941
FROM:          LEONARD G. BROWN III, ESQUIRE
RE:            FOIA REQUEST
# OF PAGES:    3   INCLUDING COVER
Additional Comments or Special Instructions:

If you have not received all pages of this fax transmission, or if you have questions, please call (717) 299-7101

In the event that this transmission is received in error, please notify us, at the sender, by telephone and return the
original transmission to us at the above address by first class U.S. Mail. We are sorry for the inconvenience, this may have
caused. Thank you.

```
                QUARRYVILLE MPO
              QUARRYVILLE, Pennsylvania
                    175669998
                 4144060566 -0097
10/24/2007     (717)786-2420      04:16:28 PM

               Sales Receipt
Product           Sale  Unit        Final
Description       Qty   Price       Price

RIVERDALE MD 20737                  $0.41
Zone-2 First-Class
Letter
 0.60 oz.
Return Rcpt (Green Card)            $2.15
Certified                           $2.65
Label #:
            70050390000429670468
                                  =========
Issue PVI:                          $5.21

Total:                              $5.21

Paid by:
Cash                               $10.00
Change Due:                        -$4.79

Order stamps at USPS.com/shop or call
1-800-Stamp24.  Go to USPS.com/clickship
to print shipping labels with postage.
For other information call 1-800-ASK-USPS.

Bill#: 1000301131610
Clerk: 07

   All sales final on stamps and postage.
   Refunds for guaranteed services only.
        Thank you for your business.
*******************************************
*******************************************
        HELP US SERVE YOU BETTER

     Go to: http://gx.gallup.com/pos

     TELL US ABOUT YOUR RECENT
          POSTAL EXPERIENCE

         YOUR OPINION COUNTS
*******************************************
*******************************************


            Customer Copy
```

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

| | |
|---|---|
| Postage | $ $0.41 |
| Certified Fee | $2.65 |
| Return Receipt Fee (Endorsement Required) | $2.15 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $5.21 |

Postmark Here
OCT 24 2007
10/24/2007
USPS

Sent To  Ms. Leisa Banks
Street, Apt. No.; or PO Box No.  4700 River Rd, Unit 50
City, State, ZIP+4  Riverdale, MD 20737-1232

PS Form 3800, June 2002          See Reverse for Instructions

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. <br> ■ Print your name and address on the reverse so that we can return the card to you. <br> ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature <br> X *M McKinney*  ☐ Agent ☐ Addressee <br> B. Received by ( Printed Name)  C. Date of Delivery <br> *M McKinney* |
| 1. Article Addressed to: <br><br> Ms. Leisa Banks <br> FOIA Officer <br> Animal & Plant Health <br>    Inspection Service <br> 4700 River Road, Unit 50 <br> Riverdale, MD 20737-1232 | D. Is delivery address different from item 1?  ☐ Yes <br> If YES, enter delivery address below:  ☐ No |
| | 3. Service Type <br> ☒ Certified Mail  ☐ Express Mail <br> ☐ Registered  ☐ Return Receipt for Merchandise <br> ☐ Insured Mail  ☐ C.O.D. <br> 4. Restricted Delivery? *(Extra Fee)*  ☐ Yes |
| 2. Article Number <br> *(Transfer from service label)* | 7005 0390 0004 2967 0468 |

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

# EXHIBIT B

# EXHIBIT C

**USDA**

**United States Department of Agriculture**

Animal and Plant Health Inspection Service

Legislative and Public Affairs

Freedom of Information

4700 River Road Unit 50 Riverdale, MD 20737-1232

October 30, 2007

Mr. Leonard G. Brown
Clymer & Musser P.C.
408 West Chestnut Street
P.O. Box 176
Lancaster, PA 12608

RECEIVED NOV 0 5 2007

FOIA 08-100

Dear Mr. Brown:

This is to acknowledge receipt of your October 24, 2007, Freedom of Information Act (FOIA) in which you requested all records of registered premises contained in the National Premises Information Repository, the number of requests to be removed and the number of those that have actually been removed. Your request was received in this office on October 29, 2007 and assigned case number FOIA 08-100.

The records you seek are maintained outside of this Office and we have not yet been able to complete a search to determine whether there are records within the scope of your request. Accordingly, we will be unable to comply with the twenty-working-day time limit in this case as well as the ten additional days provided by the statute.

I regret the necessity of this delay, but I assure you that your request will be processed as soon as possible. If you have any questions or wish to discuss reformulation or an alternative time frame for the processing of your request, you may contact me at (301) 734-8696.

Sincerely,

*Celeste Camp*

for Robbie Perry
FOIA Program Specialist

# EXHIBIT D

**USDA**

RECEIVED DEC 1 7 2007

**United States
Department of
Agriculture**

DEC 1 3 2007

Leonard G. Brown, III
Clymer & Musser, PC
408 West Chestnut Street
P.O. Box 1766
Lancaster, PA  17608-1766

**Marketing and
Regulatory
Programs**

**Animal and
Plant Health
Inspection
Service**

Dear Mr. Brown:

**Legislative and
Public Affairs**

This is in response to your October 24, 2007 Freedom of Information Act (FOIA) request

**Freedom of
Information**

for 1) All records of registered premises contained in the National Premises Information
Repository or NAIS database; 2) The number of requests to be removed from the premises
database that APHIS has received from owners/managers of registered premises; and 3)

**4700 River Road
Unit 50
Riverdale, MD
20737-1232**

The number of premises that actually have been removed from the database.  Your request
was received in this office on October 29, 2007 and assigned case number FOIA 08-100.

Please be advised information contained in the NAIS is personal in nature and is being
withheld in its entirety under FOIA Exemption 6, 5 U.S.C. § 552(b)(6).  This exemption
protects information from disclosure when its release would cause a clearly unwarranted
invasion of personal privacy.  We found no additional information responsive to your
request.

You may appeal our denial of any or all of this information and/or finding of no additional
information.  If you choose to appeal, your appeal must be in writing and must be sent
within 45 days of the date of this letter to:

> Administrator
> Animal and Plant Health Inspection Service
> Ag Box 3401
> Washington, D.C.  20250-3401

Please refer to FOIA 08-100 in your appeal letter and add the words "FOIA Appeal" to the
front of the envelope.  To assist the Administrator in reviewing your appeal, provide
specific reasons why you believe modification of the determination is warranted.

Because the cost to process your request is less than $25.00, the fee has been waived.  If
you have any questions. please contact Mr. Robbie Perry of my staff at (301) 734-8696.

Sincerely,

Garfield Daley
Acting Director
Freedom of Information & Privacy Act Staff
Legislative and Public Affairs



**APHIS** *Safeguarding American Agriculture*
APHIS is an agency of USDA's Marketing and Regulatory Programs

An Equal Opportunity Provider and Employer

# EXHIBIT E

# CLYMER & MUSSER, P.C.

### ATTORNEYS AT LAW

JAMES N. CLYMER
ROBERT F. MUSSER
JEFFREY D. MOHLER
LEONARD G. BROWN, III
RANDALL L. WENGER
ANDREA L. SHAW
DAVID R. DYE

DENNIS E. BOYLE
OF COUNSEL

408 WEST CHESTNUT STREET
POST OFFICE BOX 1766
LANCASTER, PA 17608-1766
———
(717) 299-7101
FAX (717) 299-5115
www.clymerlaw.com
E-MAIL law@clymerlaw.com

210 NORTH STATE STREET
EPHRATA, PA 17522
(717) 733-7471
———
16 SOUTH HESS STREET
QUARRYVILLE, PA 17566
(717) 786-0500
FAX (717) 786-2111

DIRECT ALL CORRESPONDENCE
TO THE LANCASTER OFFICE

December 21, 2007

Cindy J. Smith
Administrator
Animal and Plant Health Inspection Service
Ag Box 3401
Washington, D.C. 20250-3401

## FOIA APPEAL – FOIA 08-100

## VIA E-MAIL TO Cindy.J.Smith@usda.gov and CERTIFIED MAIL

On October 24, 2007, we submitted a Freedom of Information Act request on behalf of Mary-Louise Zanoni, a freelance journalist whose work on the National Animal Identification System has been widely published. The request was received by APHIS on the same date, October 24, 2007.[1]

We requested that the following records be provided, on computer disk: (1) All records of registered premises contained in the National Premises Information Repository; (2) the number of requests to be removed from the premises database that APHIS has received; and (3) the number of premises that actually have been removed from the database.

By letter, dated December 13, 2007, from Garfield Daley, Acting Director, APHIS Freedom of Information & Privacy Act Staff, our request was denied for the following reason:

> Please be advised information contained in the NAIS is personal in nature and is being withheld in its entirety under FOIA Exemption 6, 5 U.S.C. § 552 (b) (6). This exemption protects information from disclosure when its release would cause a clearly unwarranted invasion of personal privacy. We found no additional information responsive to your request.

---

[1] APHIS denied the request by letter from Garfield Daley dated December 13, 2007. APHIS's Dec. 13th letter stated that our request was received by APHIS on October 29, 2007. However, that statement is incorrect. We conveyed our request to APHIS by facsimile on October 24, 2007, so that would be the valid date of receipt by APHIS. Apparently the October 29th date refers to APHIS's receipt of our follow-up copy of the request, sent by certified mail.

Cindy J. Smith
December 21, 2007
Page 2 of 3

We hereby request that the Administrator reverse the decision of Garfield Daley. The information sought in our October 24, 2007 request does not fall within Exemption 6, 5 U.S.C. § 552 (b) (6). Under § 552 (b) (6), certain records may be exempt from FOIA disclosure if they are "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

To the contrary, the records in the National Premises Information Repository (NPIR) are not the type of records that would fall within FOIA Exemption 6. This is apparent from APHIS's own description of the NPIR records. In addition, the NPIR records present no problem of "invasion of personal privacy" and their disclosure serves a clear public interest in dissemination of information about the National Animal Identification System. Moreover, the release of this information provides a distinct benefit to the public for the reasons discussed below. Thus, the requested NPIR records should not be withheld on the basis of Exemption 6.

As explained in our original request, the NPIR records are described by APHIS as containing the name of an entity, a contact person, address, telephone number, operation type, and alternative telephone number. APHIS has also characterized the NPIR records as "phone book" information and basic information one could find through a Google search. Such a mere list of business contact information presents no threat to any reasonable "privacy" interest. This bare list reveals nothing "private" or "personal" about the entities on it. Further, the public interest in disclosure of these NPIR records is of the highest order. The National Animal Identification System has been a subject of great public controversy, drawing large crowds of citizens to public meetings and hearings. NAIS has been the subject of a critical General Accounting Office study and its implementation by the USDA has been widely criticized by the public, by interest groups, by the media, and by members of Congress. Therefore, it will be greatly in the public interest to be able to examine the records of the NPIR, and what the records may reveal about such questions as whether parties listed in the database are all included on a "voluntary" basis as claimed by USDA/APHIS, whether parties who have requested removal from the NPIR have, in fact, been removed, and how common requests for removal have been. For all the foregoing reasons, the NPIR records are not subject to FOIA Exemption 6. See U.S. Dept. of State v. Ray, 502 U.S. 164 (1991); News-Press v. U.S. Dept. of Homeland Security, 489 F.3d 1173 (11th Cir. 2007); Hertzberg v. Veneman, 273 F. Supp.2d 67 (D.D.C. 2003).

In addition, the second and third items sought in our request, namely, the number of requests APHIS has received to remove records from the NPIR and the number of records actually removed, do not seek any personally identifiable information. These items seek only APHIS's statements of how many removals have been requested, and how many removals have been accomplished. Thus, the disclosure of requested items (2) and (3) is not plausibly barred by FOIA Exemption 6.

Finally, we question the basis for the statement in Garfield Daley's December 13, 2007 letter that "[b]ecause the cost to process your request is less than $25.00, the fee has been waived." In a

Cindy J. Smith
December 21, 2007
Page 3 of 3

telephone conversation on November 16, 2007, Mr. Robbie Perry of the APHIS FOIA staff informed me that some 17,000 pages of printed NPIR records had been sent to his office in APHIS's efforts to process our FOIA request. We expect you will maintain these records intact in the event that a court action is necessary. It would seem that the copying of these documents may have entailed an expense of greater than $25.00. Moreover, if this appeal is granted and the records are released, costs may well exceed $25.00. Therefore, we continue to seek a determination of the proper fee status of our request pursuant to 5 U.S.C. § 552 (a) (4) (A) (iii) (public interest) and/or 5 U.S.C. § 552 (a) (4) (A) (ii) (II) (news media).

In sum, this appeal seeks the following relief: (1) Reversal of the December 13, 2007 denial of our requests for NPIR records of registered premises, the number of requests APHIS has received for removal from the NPIR, and the number of records APHIS has actually removed from the NPIR; (2) a direction to APHIS FOIA staff to produce the records requested without any further delay; and (3) a determination of the fee status of our request pursuant to 5 U.S.C. § 552 (a) (4) (A) (iii) and 5 U.S.C. § 552 (a) (4) (A) (ii) (II).

Thank you for your anticipated prompt consideration of this appeal.

Very truly yours,

Leonard G. Brown, III

cc: Mary-Louise Zanoni

U.S. POSTAL SERVICE    **CERTIFICATE OF MAILING**
MAY BE USED FOR DOMESTIC AND INTERNATIONAL MAIL, DOES NOT
PROVIDE FOR INSURANCE—POSTMASTER

Affix fee here in stamps
or meter postage and
post mark. Inquire of
Pos fee.

Received From: Len Brown, Esq
Clymer & Musser, P.C.
408 West Chestnut St
Lancaster, PA 17603

One piece of ordinary mail addressed to:
Cindy J. Smith, Administrator
Animal & Plant Health Inspection Service
Ag Box 3401
Washington, D.C. 20250-3401

PS Form 3817, Mar. 1989

---

**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| Postage | $ | 0.41 |
| Certified Fee | | 2.65 |
| Return Receipt Fee (Endorsement Required) | | 2.15 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 5.21 |

Postmark
Here

Sent To: Cindy J. Smith, Administrator
Animal & Plant Health Inspection Service
Street, Apt. No.; or PO Box No. Ag Box 3401
City, State, ZIP+4 Washington D.C. 20250-3401

7005 1160 0002 1834 2239

PS Form 3800, June 2002    See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
  Item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

Cindy J. Smith
Administrator
Animal & Plant Health
        Inspection Service
Ag Box 3401
Washington, D.C. 20250-3401

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent
                     ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
LINDA CAREY                      12-26-07

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☑ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    7005 1160 0002 1834 2239

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| MARY-LOUISE ZANONI | UNITED STATES DEPARTMENT OF AGRICULTURE |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  **ST. LAWRENCE**
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

CLYMER & MUSSER, P.C.
408 W. CHESTNUT ST.
LANCASTER, PA 17603
(717) 299-7101

ATTORNEYS (IF KNOWN)

---

## II. BASIS OF JURISDICTION
(PLACE an x IN ONE BOX ONLY)

O 1 U.S. Government Plaintiff

O 3 Federal Question
(U.S. Government Not a Party)

● 2 U.S. Government Defendant

O 4 Diversity
(Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

---

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**O A. Antitrust**

☐ 410 Antitrust

**O B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**O C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**O D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

**O E. General Civil (Other)**    OR    **O F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ⊙ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☒ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

FREEDOM OF INFORMATION ACT  5 U.S.C. SS552; INVALIDATE DETERMINATION BY DEFENDANT REGARDING DISCLOSURES

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    **DEMAND $** [_____]  Check YES only if demanded in complaint    **JURY DEMAND:** YES ☐ NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form

DATE  5/30/08  **SIGNATURE OF ATTORNEY OF RECORD**

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.