**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ )<br>MARY-LOUISE ZANONI,                )<br>                                  )<br>        Plaintiff,                )<br>                                  )<br>                                  )<br>    v.                            )<br>                                  )<br>UNITED STATES DEPARTMENT OF        )<br>AGRICULTURE,                      )<br>                                  )<br>        Defendant.                )<br>                                  )<br>_____) | Civil Action No. 08-939<br>(EGS) |

**MEMORANDUM OPINION**

Plaintiff Mary-Louise Zanoni brings this action against Defendant United States Department of Agriculture ("USDA"), under the Privacy Act of 1974, 5 U.S.C. § 522a, and the Freedom of Information Act ("FOIA"), 5 U.S.C. § 522, seeking to (1) enjoin the USDA from converting the National Animal Identification System ("NAIS") and the National Premises Information Repository ("NPIR") into a Privacy Act system, and (2) to compel the USDA to comply with her FOIA request.  Plaintiff and defendant filed cross-motions for summary judgment.  After considering the motions, responses and replies thereto, the applicable law, and the entire record, this Court **DENIES** plaintiff's motion for

summary judgment and **GRANTS** defendant's cross-motion for jummary judgment.

I.    **BACKGROUND**

The USDA, through its Animal Plant Health Inspection Service ("APHIS"), maintains the NPIR and NAIS databases.  The databases serve as a centralized registry system used to quickly identify and notify producers about animal disease outbreaks in their area.  The information in the NAIS database includes a unique identification number for each animal and premises, and the name, phone number, and address of the producer.  The NPIR has the same contact information for the producer and also includes the name of the premises, and the generic type of operation (*i.e.* feedlot, farm, veterinary clinic).  The gathering of information for these databases is conducted by the federal government with cooperation from the states.  Currently, states have autonomy over the registration process for premises located within their borders. As such, states may have their own criteria for premises registration, including giving premises IDs to producers who participate in state disease control/eradication programs (*i.e.* vaccinations, testing).  After collecting all of the information needed for their own databases, states submit the producer contact information, premises ID number and location into the Standardized Premises Registration System ("SPRS") and the NPIR. While many producers register in the NPIR through state programs,

2

others register in the database through federally regulated disease control and eradication programs.  For those producers who do not participate in either of the above mentioned programs, registration in the NPIR is voluntary.

There are opt-out options available for producers who do not want to remain registered in the NPIR.  The producer is supposed to receive a notice in the mail when his or her information is transferred from the state to the NPIR.  This notice informs the producer of the voluntary nature of the program and allows the producer to contact the state if he or she wants to be removed from the NAIS or NPIR.  At this point, the producer can either have their status in the NAIS or NPIR database changed to inactive or, if the producer does not participate in any disease prevention programs like those mentioned above, he or she may have all of the information about their premises deleted from the database.  Alternatively, if the producer is involved in disease prevention programs, he or she has the option of having all of his or her personal identification information deleted from the database, leaving only the premises ID and address for disease tracking purposes.  The APHIS processes opt-out requests for the NPIR, and states are responsible for deleting the requesting producer's information from the state databases.

Plaintiff is a journalist who planned to write a series of articles from July 2008 to July 2009 about the NPIR, asserting

that though the USDA claims the database is voluntary, many
producers are registered without their knowledge, permission,
and/or despite their opposition to registration.  On October 24,
2007, plaintiff submitted a request to the APHIS FOIA officer
asking for computer disks with the following information:  (1)
all records of registered premises contained in the NPIR,
including the name of the entity, name of contact person,
address, telephone number, alternate telephone number, and type
of operation run on the premises; (2) the number of requests to
be removed from database(s) that APHIS has received from
owners/managers of registered premises; and (3) the number of
premises that actually have been removed from the database.

    The APHIS FOIA officer processed the request through to the
Office of Veterinary Services ("OVS"), which, among other things,
maintains NAIS.  On November 16, 2007, the OVS supplied the FOIA
officer with between 14,000 and 17,000 pages of information in
response to plaintiff's request.  Shortly thereafter, on December
13, 2007, the USDA denied her request and informed plaintiff that
the requested records were exempt from disclosure pursuant to
FOIA Exemption (6), which provides that FOIA disclosure
requirements do not apply to "personnel and medical files and
similar files the disclosure of which would constitute a clearly
unwarranted invasion of personal privacy."  5 U.S.C. § 552
(b)(6).

4

Plaintiff appealed the USDA's determination on December 21, 2007. As a result of her appeal, in January and February of 2008, the FOIA officer inquired again with the OVS to see if there were additional responsive records that could be disclosed with respect to items (2) and (3) of plaintiff's request. During this inquiry, the FOIA officer discovered that the OVS created a separate database for tracking producer removal requests. This database included, among other things, information about the submitted request such as the data indicated for deletion, the reason for the deletion (*i.e.*, opt-out program or duplication), whether it was removed from the NPIR, and, if so, the date of the removal. The FOIA officer requested a copy of this database and received information in the aforementioned areas for November 2006 to October 2007. The USDA determined that the other fields were not responsive to items (2) and (3) of plaintiff's request.

On April 30, 2008, APHIS printed a notice in the Federal Register regarding its proposal for the conversion of four NAIS databases into a system of records under the Privacy Act , which would be effective on June 9, 2008.[1] Plaintiff filed a complaint in this Court on June 2, 2008: seeking (1) to reverse the USDA's determination that disclosure of the information requested by

---

[1] The Privacy Act defines a "system of records" as "A group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to that individual." 5 U.S.C. § 522a(A)(5).

plaintiff was not required under FOIA; (2) to preliminarily
enjoin the USDA from converting the NPIR and NAIS databases into
a Privacy Act system; (3) to order the USDA to surrender to the
Court the documents relevant to plaintiff's FOIA request; (4) a
declaration that § 1619 of the Food, Conservation and Energy Act
("FCEA") of 2008 is inapplicable to plaintiff's FOIA request; and
(5) a declaration that the FCEA, as enacted, violates the
Presentment Clause of the United States Constitution and the
separation of powers doctrine.[2]  On June 4, 2008, by agreement of
the parties, this Court ordered defendant to print another notice
in the Federal Register postponing the conversion of the NPIR
into a Privacy Act system until further notice from the Court, to
preserve the NPIR documents responsive to plaintiff's FOIA
request, and to access the NPIR database only when necessary to
track or identify a diseased animal.

On June 19, 2008, in response to the Court's Order,
defendant sent plaintiff the database information that the FOIA
officer received pursuant to his inquiry in January and February
of 2008.  The USDA provided information from November 30, 2006 to
October 9, 2007, which included the names of producers who were
removed from the NPIR database but did not include dates of
removal.  The USDA informed plaintiff on June 30, 2008 that

---

[2] The parties refer to FCEA by its public law designation,
§ 1619, but this provision has now been enacted and will be
referred to in this opinion as § 8791. *See* 7 U.S.C. § 8791.

6

columns C through Q of the NPIR, though responsive to plaintiff's claim, were exempt from disclosure under FOIA Exemption (3) because § 1619 of the FCEA of 2008 prohibited disclosure.[3] Additionally, the USDA informed plaintiff that other information relevant to her FOIA request, specifically columns A, C through L, and N through Q of the NPIR database, were also exempt from disclosure because FOIA Exemption (6) allows an agency to withold information when disclosure would be an unwarranted invasion of the personal privacy of the producers listed in the database.

Zanoni filed a motion for summary judgment in this court on July 2, 2008, seeking to enjoin the USDA from converting the NAIS and the NPIR into a Privacy Act system; and (2) seeking to compel the USDA to comply with her FOIA requests for "[a]ll records of registered premises contained in the NPIR . . . including the name of entity, name of contact person, address, telephone number, operation type and alternative telephone number."  Compl. at 35.  Defendant filed a cross-motion for summary judgment on July 31, 2008 seeking to dismiss plaintiff's Privacy Act claim for lack of standing and seeking a ruling that FOIA Exemptions

---

[3] FOIA Exemption (3) provides that disclosure requirements do not apply when the information requested is "specifically exempted from disclosure by statute . . . provided that such statute (A) requires that matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 522(b)(3).

(3) and (6) permit the USDA to withhold the requested
information.

## II.   DISCUSSION

### A.   Standard of Review

Summary judgment should be granted only if the moving party
has shown that there are no genuine issues of material fact and
that the moving party is entitled to judgment as a matter of law.
Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322
(1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991
(D.C. Cir. 2002).  In determining whether a genuine issue of
material fact exists, the Court must view all facts in the light
most favorable to the non-moving party.  *See Matsushita Elec.
Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The
non-moving party's opposition, however, must consist of more than
mere unsupported allegations or denials and must be supported by
affidavits or other competent evidence setting forth specific
facts showing that there is a genuine issue for trial.  Fed. R.
Civ. P. 56(e); *see Celotex Corp.*, 477 U.S. at 324.

### B.   Privacy Act Claim

Zanoni asserts that § 522a(g)(1)(D) of the Privacy Act gives
her a cause of action to enjoin the USDA from converting the NAIS
and NPIR databases into a Privacy Act system.  This section of
the statute provides in relevant part that "[a]n individual may
bring a civil action against an agency that has failed to comply

with the Privacy Act in a way having an adverse effect on the individual." 5 U.S.C. § 522a(g)(1)(D). Plaintiff argues that since "individual" is defined in the statute as a "citizen of the United States," 5 U.S.C. § 522a(a)(2), and since conversion of the NAIS and NPIR databases would inhibit her ability to access the information needed to write her exposé articles, the USDA's actions will have an adverse effect on her within the meaning of the statute. Defendant asserts that Zanoni cannot maintain her claim under the Privacy Act because she has not suffered the requisite injury in fact described by the Supreme Court in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)(explaining that plaintiff cannot rest on "mere allegations" of standing, but must provide "specific facts" by affidavit or other evidence (quoting Fed. R. Civ. P. 56(e))).

The language of the Privacy Act indicates that its purpose is to give individuals whose personal information is stored by federal agencies the ability to protect the collection, maintenance and dissemination of their information. *See* 5 U.S.C. § 522a(A)(1)-(B)(2). Subsections (A), (B), (C) and (D)(2) of § 522a(g)(1) all connect an individual's ability to bring a civil action to an injury resulting from personal information improperly maintained, disclosed, or collected by a federal agency. *See* 5 U.S.C. § 522a(g)(1)(A)-(D)(2). To view subsection (g)(1)(D) in isolation of the other sections and to interpret

9

"individual" so broadly to apply it to any citizen of the United States -- regardless of whether they are the subject of the information -- is inconsistent with the way the term is used in other areas of the Privacy Act.  The cases that plaintiff relies on to support her claim under § 522a(g)(1)(D) further support this construction of the Privacy Act and are distinguishable from this case because they involve plaintiffs whose personal information was disclosed or improperly maintained by a federal agency.  *See Doe v. Chao*, 540 U.S. 614, 617 (2004); *McCready v. Nicholson*, 465 F.3d 1, 5-6 (D.C. Cir. 2006).

Moreover, the statute requires agencies to safeguard personal information by allowing an individual to "prevent records pertaining to him obtained by the agency . . . from being used or made available to another without his consent." § 522a(B)(2).  To allow a third party to enjoin the agency from safeguarding personal information in a Privacy Act system because that party claims the rights guaranteed to other individuals may have been violated contradicts the purpose of the Act.  For the aforementioned reasons, Zanoni is not an "individual" within the meaning of § 522a(g)(1)(D).  Because plaintiff has no cause of action under the Privacy Act, she has not suffered an injury in fact and lacks standing to bring a Privacy Act claim.  *See Lujan*, 504 U.S. at 560-61.  Therefore, the USDA's motion for summary judgment on Zanoni's Privacy Act claim is **GRANTED**.

C.    **FOIA Exemption (3) for FOIA Request Item No. (1)**

Under FOIA, "[e]ach agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5. U.S.C. § 552(a)(3)(A). An agency may deny a FOIA request when the information sought is exempt from disclosure under FOIA. 5 U.S.C. § 552(d). When reviewing a motion for summary judgment in a FOIA matter, the court reviews the agency's decision *de novo*. *Assassination Archives and Research Ctr. v. CIA*, 334 F.3d. 55, 57 (D.C. Cir. 2003). Under a *de novo* standard of review, the agency bears the burden of proving the requested information falls within a FOIA exemption. *Id.*

The USDA argues that information responsive Zanoni's request for "[a]ll records of registered premises contained in the NPIR . . . including the name of the entity, name of contact person, address, telephone number, operation type, and alternate telephone number" is exempt from disclosure pursuant to FOIA Exemption (3). FOIA Exemption (3) provides that matters are exempt from disclosure when "a statute requires that . . . matters be withheld from the public in such a manner as to leave no discretion on the issue . . . or establishes particular

11

criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 522(b)(3).

When determining whether FOIA Exemption (3) applies, the court "must first determine whether the statute is a withholding statute . . . that . . . *specifically exempt[s]* matters from disclosure." *Pub. Citizens, Inc. v. Rubber Mfrs. Ass'n*, 533 F.3d 810, 813 (D.C. Cir. 2008) (citation omitted). If the statute is determined to be a withholding statute under FOIA Exemption (3), then the court must determine whether it is one that does so under the conditions articulated in FOIA Exemption (3). *Id.* To determine whether a statute is a withholding statute that prohibits disclosure, the court looks at the language of the statute on its face. *See Reporters Comm. For Freedom of Press v. U.S. Dep't of Justice*, 816 F.2d 730, 735 (D.C. Cir. 1987) (explaining that whether FOIA Exemption (3) applies to the statute is determined by the actual words of the statute), *rev'd on other grounds by* 489 U.S. 749 (1989).

The statute at issue here is the FCEA, which provides that "any officer or employee of the Department of Agriculture . . . shall not disclose . . . information provided by an agricultural producer or owner of agricultural land concerning the agricultural operation, farming or conservation practices, or the land itself, in order to participate in programs of the Department." 7 U.S.C. § 8791(b)(2)(A). The FCEA further defines

12

"agricultural operation" to "include[] the production and marketing of agricultural commodities and livestock." *Id.* § 8791(b)(1).

On its face, § 8791(b)(2)(A) prohibits disclosure and gives little discretion to the agency as to how the provision should be applied. Though the section states "[e]xcept as provided in paragraphs (3) and (4)," it is clear that disclosure of the type of information that the statute describes is prohibited. *Id.* § 8791(b)(2). Paragraphs (3) and (4), which are referred to as exceptions, provide specific instances and methods in which disclosure of the information described in (2) is permitted. The Secretary may disclose the information described in paragraph (2) to government agencies that are working with the Secretary on USDA programs when those agencies provide technical or financial assistance for information described in paragraph (2) or when those agencies are responding for disease control purposes. *See* 7 U.S.C. § 8791(b)(3)(A)(i)-(ii). In other words, § 8791 satisfies FOIA Exemption (3)(A) because it leaves no discretion to the agency as to disclosure of this type of information. FOIA Exemption (3) provides that the statute must require information to be withheld in a way that leaves no discretion on the issue or that establishes particular criteria for withholding or refers to particular types of matters to be withheld. *See* 5 U.S.C. § 522(b)(3). Section 8791 of the FCEA satisfies both the

conditions necessary for FOIA Exemption (3) status.  Paragraph
(2) makes it clear that information shall not be disclosed by the
Department of Agriculture if that information meets the criteria
that the paragraph expressly provides, which is that it is
"provided by an agricultural producer or owner of agricultural
land" and that it is "concerning the agricultural operation,
farming . . . or the land itself, in order to participate in
programs of the Department."  7 U.S.C. § 8791(b)(2)(A).  The
language of this provision does not indicate that the information
described may be disclosed upon the Secretary's discretion.
Moreover, the exceptions that it do permit the Secretary to
disclose information apply to specific instances in which the
statute permits disclosure, none of which apply to Zanoni.  The
only instance in this provision where the Secretary is given any
discretion is in paragraph (3), which plainly does not apply in
the instant case.  *See* 7 U.S.C. § 8791(b)(3)(A).

The only issue that remains concerning FOIA Exemption (3) is
whether the NPIR information that Zanoni seeks is information
"concerning agricultural operation, farming . . . or the land
itself" within the meaning of § 8791 (b)(2)(A).

Plaintiff argues that the contact information listed in the
NPIR database does not fall within the meaning of "agricultural
operation" because it has no effect on production or marketing.
Further, Zanoni asserts that the words used in the subsection all

14

relate to limits to disclosure for information that is about "commercial activities or trade secrets used in agriculture." Pl.'s Mot. Summ. J. at 27.  She supports this proposition by distinguishing the data sought in this case from that disclosed in *Multi Ag Media LLC. v. Department of Agriculture*, 515 F.3d 1224, 1226-27 (D.C. Cir. 2008), where the plaintiff sought disclosure of information about farm acreage, irrigation practices, farm tract, characteristics of farm land, boundary identification, and calculated acreage.  Plaintiff asserts that the information requested in *Multi Ag Media* is the type of information Congress intended to protect in § 8791 and not the "phone book" type of information she seeks.

Plaintiff's assertion that § 8791 does not apply to the information that she requested contradicts the clear indication in the statute that the identity of the producer and individual details about the premises are prohibited from disclosure. Paragraph (4), which provides when information falling under paragraph (2) can be disclosed, specifically states that to be disclosed the information must be in "statistical or aggregate form without naming the individual owner, operator or producer." 7 U.S.C. § 8791 (b)(4)(B)(i).  This provision makes clear that Congress intended this type of information to be withheld under paragraph (2) because it prohibits disclosure of names and, logically, contact information where disclosure of some

15

information regarding agricultural operation is permitted.  The
information that Zanoni requests must be considered information
"concerning agricultural operation" because even in providing
exceptions for disclosure, the statute requires that the name of
the producer, or information referring to the gathering site
remain undisclosed.  Therefore, § 8791(b)(2)(A) does apply to
Zanoni's FOIA request and her request was properly denied under
FOIA Exemption (3).

**D. FOIA Exemption (6) for FOIA Request Item No. (1)**

Finally, Zanoni argues that applying § 8791(b)(2)(A) to her
FOIA request would be a retroactive application of the law
because the law was enacted subsequent to her FOIA request.  The
plaintiff's argument fails on this point because the general rule
is that the applicable law in a case is the law in effect at the
time the court makes its decision.  *Cf.  Bradley v. Sch. Bd. of
Richmond*, 416 U.S. 696, 711 (1974).  Morever, the plaintiff has
not offered any authority to support a different rule in this
context.  Therefore, § 8791 is applicable here.  Defendant's
cross-motion for summary judgment on this claim is **GRANTED**.
Because FOIA Exemption (3) applies to Zanoni's request, a
discussion of the applicability of FOIA Exemption (6) is
unnecessary.

**E. FOIA Request Items No. (2) & (3)**

16

Furthermore, the Court concludes that Zanoni's FOIA request for information regarding the "number of requests to be removed from premises database that APHIS has received from owners/managers of registered premises; and the number of premises that actually have been removed from the database," is no longer at issue.

Zanoni briefly states that the USDA provided insufficient information in response to this Court's Order that the USDA produce information responsive to FOIA request items (2) and (3). The plaintiff did not challenge the adequacy of defendant's search for information responsive to request items (2) and (3). The standard for the adequacy of a search focuses the inquiry on the search itself, and failure to uncover certain documents does not subtract from the adequacy of an agency's search. *See Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004). Therefore, if the USDA has shown that its search was "reasonably calculated to uncover all relevant documents," then its search is reasonable. *Id.* The record indicates that the USDA provided Zanoni with information it deemed to be responsive to her request on July 30, 2008. The record also indicates that the NPIR database did not store information regarding the overall number of requests for opt-out, but that the agency could provide her with the date of removal requests, which it has provided. To the extent the plaintiff failed to challenge the USDA's declaration that it has

17

searched for and provided all information responsive to her
inquiry, her FOIA request in this area appears to have been
satisfied.

## III.  CONCLUSION

Plaintiff's motion for summary judgment is **DENIED** with
respect to enjoining the USDA from converting the NPIR and NAIS
databases into a Privacy Act system, and with respect to FOIA
request Item No. 1.  Defendant's cross-motion for summary
judgment is **GRANTED** with respect to plaintiff's Privacy Act claim
and its denial of her FOIA request pursuant to FOIA Exemption 3.
An appropriate Order accompanies this memorandum opinion.


**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**            United States District Judge**
**            March 31, 2009**

18